AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Apr 10, 2025**

SEAN F. McAVOY, CLERK

| United States of America | ) |
|---|---|
| v. | ) |
| SANTOS MENDOZA | ) Case No. 4:25-MJ-07083-ACE |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **April 8, 2025** in the county of **Franklin** in the **Eastern** District of **Washington**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii) | Possession with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Cocaine |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Benjamin LaMothe*
*Complainant's signature*

Benjamin LaMothe, Special Agent, DEA
*Printed name and title*

☑ Sworn to telephonically and signed electronically
☐ Sworn to before me and signed in my presence.

Date: 04/10/2025

*Alexander C. Ekstrom*
*Judge's signature*

City and state: Yakima, Washington

ALEXANDER C. EKSTROM, U.S. Magistrate Judge
*Printed name and title*

AUSA: BLP          COUNTY: FRANKLIN

AUSA: BLP

County: Franklin

In Re:  Affidavit in Support of Criminal Complaint for Santos MENDOZA

STATE OF WASHINGTON  )
                                                 ) ss
Benton County                       )

# AFFIDAVIT

I, Benjamin LaMothe, Special Agent, being first duly sworn on oath, deposes and states:

## INTRODUCTION AND AGENT BACKGROUND

1.I am a Special Agent with the Drug Enforcement Administration (DEA), duly appointed according to the law and acting as such. I have been so employed since November of 2018. As a DEA Special Agent, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, Unites States Code Section 2516.

2.I am currently assigned to the DEA Tri-Cities Resident Office (TCRO) and have been since March of 2024. Prior to my assignment to the DEA TCRO, I was assigned to the DEA Sierra Vista Resident Office High Intensity Drug Trafficking Areas (HIDTA) Southeast Arizona Major Investigations Team (SAMIT) in Sierra Vista, Arizona beginning in June of 2019. In connection with my official duties as a Special Agent of the DEA, I am responsible for conducting

Affidavit of Special Agent LaMothe - 14:25-MJ-07083-ACE

investigations into violations of Title 21 of the United States Code and other federal criminal statutes. During the course of these investigations, I have been the Affiant for court ordered warrants; conducted or participated in physical and electronic surveillance; executed federal search warrants; conducted numerous debriefings of informants, cooperating defendants, and other individuals cooperating with the United States; seized and evaluated items of evidence, narcotics records, and financial documents; and reviewed, monitored, and minimized intercepted and recorded conversations.

3. During these investigations, I have been involved in seizures of marijuana, cocaine, heroin, methamphetamine, fentanyl, and prohibited pharmaceuticals. I have assisted in the interrogation of numerous subjects/defendants involved in and/or arrested for drug and narcotics violations. I have also participated in several joint interagency federal and state investigations. I have conducted thorough background checks of targets, conducted physical surveillance, executed search warrants, monitored, and reviewed recorded conversations of drug traffickers. I have developed confidential sources and corroborated source information. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks.

4. Through my training and experience, I have become familiar with the manner in which drug traffickers smuggle, package, transport, store, and distribute narcotics as well as how they collect and launder drug proceeds. I am also familiar with the manner in which drug traffickers use telephones, cellular telephone technology, internet, pagers, coded communications, slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations. During the conduct of my official

duties, I have assisted other law enforcement officers in preparation of various search warrants, arrest warrants and criminal complaints.

5.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents/officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## INVESTIGATION

6.  In March of 2025, the DEA TCRO received information from a Cooperating Defendant[1] (CD) regarding a Drug Trafficking Organization (DTO) operating in the Eastern District of Washington. Over the course of this investigation, a white Nissan Maxima bearing Washington License Plate CNX2922 (Target Vehicle – TV), among a number of other vehicles, was identified as being utilized by the DTO.

7.  On April 8, 2025, the CD arranged the delivery of three kilograms of cocaine, which was to be delivered to the CD in Franklin County, within the Eastern District of Washington. The CD was to make a partial payment for the cocaine, with the remainder being provided on consignment.

8.  The CD informed investigators that an unknown male, acting as a courier, would be driving the TV, to an agreed upon buy location, which investigators knew to be a business in Pasco, WA. The CD advised investigators once the unknown male was at the buy location to deliver the three kilograms of

---

[1] The CD was arrested in 2025 by the DEA TCRO for federal drug violations and is cooperating with investigators in hopes of avoiding criminal prosecution, though no promises or assurances have been made. The CD has no other known drug related criminal history. The CD has prior criminal charges for DUI and Failure to Comply with an Ignition Interlock Device.

Affidavit of Special Agent LaMothe - 3                4:25-MJ-07083-ACE

cocaine. Moments later, investigators established surveillance in the vicinity and observed the TV parked in the parking lot. At that time, investigators also observed a male, later identified as Santos MENDOZA, in the driver's seat of the TV. Investigators did not observe anyone else associated to the TV.

9. A short while later, MENDOZA departed the buy location and proceeded toward to Liberty Car Wash, located at 4903 Convention Dr., Pasco, WA. Investigators maintained surveillance of MENDOZA and the TV while at Liberty Car Wash.

10. After another brief period of time, MENDOZA departed Liberty Car Wash and drove around the general area, eventually parking at Maverik Adventure's First Stop, located at 5505 Road 68, Pasco, WA. While at Maverik, investigators observed MENDOZA acting nervous and talking on a cellular phone. Investigators also observed MENDOZA appear to retrieve an item from the backseat of the TV and manipulate the area around MENDOZA's front sweatshirt pocket.

11. Investigators then observed MENDOZA walk into Maverik and then walk back out of Maverik moments later. MENDOZA was also observed speaking to another individual in the parking lot, but investigators did not observe MENDOZA passing anything to the unknown individual with whom MENDOZA was speaking. Moments later, investigators observed as MENDOZA entered the driver's seat of the TV, departed Maverik, and proceeded north on Road 68.

12. As MENDOZA turned north onto Road 68 in TV, your Affiant activated red and blue emergency lights installed in your Affiant's Official Government Vehicle (OGV) and initiated a traffic stop on the TV, at which time MENDOZA pulled into and parked the TV near Popeyes Louisiana Kitchen, located at 5814 N. Road 68, Pasco, WA. Your Affiant, wearing fully marked police insignia and assisted by officers with the Pasco Police Department utilizing

marked patrol vehicles, approached the driver's window of the TV. As investigators approached the driver's window, SA LaMothe asked MENDOZA to exit the TV, with which MENDOZA complied. SA LaMothe then informed MENDOZA of the reason for the stop and told MENDOZA he was going to be detained pending the investigation. MENDOZA was then handcuffed and placed in the backseat of a marked Pasco Police unit without issue.

13. Once MENDOZA was out of the TV and detained, a Pasco Police Officer deployed a K9 trained to detect the odor of narcotics around the TV, at which time the K9 positively alerted to the TV. Following the positive alert to the TV, Federal investigators began a probable cause search of the TV.

14. Concurrently, your Affiant informed MENDOZA of MENDOZA's Miranda Rights, which MENDOZA stated he understood. MENDOZA agreed to speak with your Affiant about the investigation, at which time your Affiant informed MENDOZA that your Affiant believed there to be bulk cocaine either within the TV, stashed somewhere at Maverik, or handed off to the unidentified individual with whom MENDOZA spoke at Maverik. Your Affiant then informed MENDOZA that your Affiant was going to go to Maverik and review security footage, at which time MENDOZA stated MENDOZA had hidden something in the garbage can in the restroom at Maverik. At that time, your Affiant and other investigators rapidly departed toward Maverick while others remained on scene at the traffic stop with MENDOZA.

15. Once at Maverik, your Affiant proceeded directly inside and into the men's bathroom, where your Affiant observed a single black garbage can. Your Affiant then lifted the black trash bag out of the garbage can and observed a tied Walmart reusable grocery bag in the bottom. Your Affiant retrieved the bag and observed three packages of what your Affiant, based on training and experience, knew to be wrapped kilograms of cocaine.

16. Your Affiant and other investigators then returned to the area of the traffic stop. Once at the traffic stop, your Affiant informed MENDOZA that investigators had recovered the three kilograms of suspected cocaine and that MENDOZA was being placed under arrest. At no time after investigators recovered the three kilograms of suspected cocaine did MENDOZA deny knowledge or previous possession.

17. On the same date, investigators reviewed and obtained security footage from Maverik, in which MENDOZA is seen manipulating an item in the backseat of the TV and the area of MENDOZA's front sweatshirt pocket. MENDOZA can then be seen entering Maverik with a large, bulky item within MENDOZA's front sweatshirt pocket and proceed toward the bathroom. MENDOZA is then seen exiting the area of the bathroom and proceeding back outside, at which time it appears the large, bulky item is no longer within MENDOZA's front sweatshirt pocket.

18. The suspected cocaine was subsequently field tested and returned as presumptively positive for cocaine. Based on my training and experience, I believe that approximately three kilograms of cocaine is consistent with a distribution amount.

//

//

//

## CONCLUSION

19. Based upon the above facts, I believe probable cause exists to charge Santos MENDOZA with Possession with Intent to Distribute 500 Grams or More

of a Mixture or Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii).

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*Benjamin LaMothe*
Benjamin LaMothe, Special Agent
Drug Enforcement Administration

Sworn to telephonically and signed electronically this  10th  day of April, 2025.

*Alexander C. Ekstrom*
Alexander C. Ekstrom
United States Magistrate Judge